```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

RASHID NASIR KHAN,

                     Petitioner,

  -vs-                                **No. 10-CV-0161(MAT)**
                                    **DECISION AND ORDER**

MARTIN D. HERRON, Director of Buffalo
Federal Detention Facility, MICHAEL
T. PHILLIPS, ICE Field Office Director,
ERIC H. HOLDER, Attorney General of
the United States,

                     Respondents.

## I.   Background

By means of a petition pursuant to 28 U.S.C. § 2241 (Docket No. 1), pro se petitioner Rashid Nasir Khan ("Khan" or "Petitioner"), an alien found removable under the Immigration and Nationality Act, seeks release from continued detention in Respondents' (collectively hereinafter "DHS") custody pending the execution of a final removal order. Khan was found deportable based upon his convictions on November 28, 2000, in New York State Supreme Court (Queens County) of Criminal Possession of a Controlled Substance (heroin) in the Second Degree in violation of New York State Penal Law ("P.L.") § 220.18(1) and Criminal Sale of a Controlled Substance (heroin) in the First Degree in violation of P.L. § 220.43(1). Khan was sentenced to a term of incarceration of 11 years.

Based upon these felony convictions, the Government instituted removal proceedings against Khan and ultimately secured an order

directing his removal from the United States. Upon his release from state custody on August 3, 2009, Khan was transferred to the custody of DHS.

Respondents indicate that they promptly commenced efforts to secure a travel document for Khan's removal to Pakistan. As of May 6, 2010, the date of Respondents' answer to the petition, DHS had provided the Pakistan Consulate with Khan's expired passport and Khan had completed an application form for a new passport. See Declaration of Donald J. Vaccaro ("Vaccaro Decl."), ¶18 (Docket Nos. 6-1, 6-2).

When this matter was transferred to the undersigned on July 5, 2011. (Docket No. 9), the Court had not, since May 6, 2010, received any further information from Respondents regarding their progress in effectuating Khan's removal and repatriation to Pakistan. Khan had been in Respondents' custody almost two years by that point, and the presumptively reasonable six-month period of detention set forth in Zadvydas v. Davis, 533 U.S. 678 (2001), had long since passed. Because the Due Process concerns discussed in Zadvydas appeared to be implicated in Khan's case, the Court directed Respondents to provide a status update regarding their efforts to repatriate Khan to Pakistan or otherwise accomplish his removal from the United States.

On August 17, 2011, Respondents submitted their status update, noting that on May 25, 2010, Khan made a request for a stay of

removal in a petition for review filed in the United States Court of Appeals for the Second Circuit, arguing that his crimes-of-conviction were not "aggravated felonies" and therefore did not render him "deportable." See Khan v. Holder, No. 10-2036-ag (2d Cir. 2010).[1] This petition was accompanied by a request for a stay of removal, which triggered the Second Circuit's "forbearance policy"[2] and thereby prevented DHS from completing arrangements for Khan's removal.

Although a travel document for Khan's removal from the United States was received by the Government from the Consulate on June 4, 2010, the Government was not able to act upon it due to the forbearance policy going into effect upon Khan's filing of the petition for review in Khan v. Holder, No. 10-2036-ag (2d Cir.).

On September 7, 2010, the Second Circuit entered an order dismissing Khan's petition for review, and that order was issued as a mandate on November 23, 2010. On November 23, 2010, DHS sent Khan's expired travel document to the Pakistan Consulate and requested that the document be re-issued and extended for three

---

[1] This was not Khan's first Petition for Review; according to Second Circuit records, a prior petition filed in September 2007 was dismissed by that court as lacking any basis in law or fact, on March 17, 2008. See Khan v. Gonzales, No. 07-3821-ag (2d Cir.).

[2] Under the Second Circuit's forbearance policy, DHS abstains from removing aliens who have filed petitions for review with corresponding motions for stay in the Second Circuit, even in the absence of a formal stay order being issued by the Second Circuit.  In other words, the Second Circuit does not need to issue a formal order granting the alien's motion for a stay in order to prevent DHS from removing the alien while the petition for review is pending.

more months. On December 2, 2010, Khan was interviewed by a consular representative. Following the interview, DHS was notified that the travel document for Kahn would be re-issued and extended.

On December 9, 2010, before DHS could complete travel arrangements to have him deported, Khan filed another petition for review with a request for stay in the Second Circuit. See Khan v. Holder, No. 10-5011-ag (2d Cir.). The forbearance policy again went into effect upon Khan's filing of the third petition and request for a stay, precluding DHS from removing Khan from the United States. In this petition before the Second Circuit, Khan sought review of orders issued by the Bureau of Immigration Appeals ("BIA") dated January 24, 2007; August 8, 2007; and April 7, 2010.

On December 16, 2010, DHS received a re-issued travel document for Khan which was valid until March 12, 2011. However, due to the informal stay of removal arising from the Second Circuit's forbearance policy, DHS again was prevented from making travel arrangements for Khan.

On January 24, 2011, while the third petition was pending, Khan filed a fourth petition for review of a BIA order dated January 5, 2011, along with a stay request, in the Second Circuit. See Khan v. Holder, No. 11-0261-ag (2d Cir.).

By order dated June 6, 2011, the Second Circuit granted the Government's motion to dismiss Petitioner's third petition for review, denied as moot the motion for stay of removal; denied as

moot the motion for assignment of pro bono counsel; and denied as moot the motion to proceed in forma pauperis. See Khan v. Holder, No. 10-5011-ag (2d Cir.). The fourth petition for review (Khan v. Holder, No. 11-0261-ag (2d Cir.)) remains pending. The informal stay of removal arising from the Second Circuit Court's forbearance policy continues to prevent DHS from effectuating Khan's removal.

In the interim, Khan's custody status has been reviewed by DHS officials in November 2009, February 2010, May 2010, and May 2011. Following each of the reviews, DHS declined to release Khan. In the May 2011 decision, DHS noted that Khan had provided "no proof of equities [sic] in the community, family ties in the United States, no evidence of employment prospects or community sponsors" and stated its belief that Khan might pose a flight risk if he were released.

The most recent custody review was in August 2011. On July 29, 2011, a panel was convened by DHS Headquarters Case Management Unit ("HQCMU") at the Buffalo Federal Detention Facility in Batavia, New York, to conduct an in-person interview of Khan. The results of this interview were incorporated into the review of Khan's custody status conducted by DHS HQCMU on August 8, 2011.[3] The panel determined to continue Khan's detention because there was "no reason to believe" that Khan's removal would not take place

---

[3] Respondents indicate that a copy of the record of Khan's personal interview can be provided to the Court for in camera inspection if necessary.

within the reasonably foreseeable future, given that DHS was "currently working with the Government of Pakistan in securing [his] removal . . . ." The decision advised Khan that he was not precluded from bringing forth evidence in the future to demonstrate a good reason why his removal was unlikely.

Respondents argue in their most recent memorandum of law that Khan's continued detention is in accordance with the applicable laws and regulations. They essentially assert the doctrine of "unclean hands" in arguing that Khan should not be heard to complain about the length of his detention because it is being extended by his own actions in filing successive petitions for review and requests for stays in the Second Circuit. Khan argues that Pakistan is unwilling to repatriate him and therefore there is no significant likelihood that he will be removed in the reasonably foreseeable future.

**II. Discussion**

The parties' pleadings indicate that Petitioner's detention is governed by 8 U.S.C. § 1231(a) rather than 8 U.S.C. § 1226(a).[4] Under Section 1231, "[t]he removal period begins on the latest of the following: (i) [t]he date the order of removal becomes administratively final[;] [or] (ii) [i]f the removal order is

---

[4] Title 8 U.S.C., § 1231 which governs detention of aliens whose removal from the United States has been administratively ordered, rather than pursuant to 8 U.S.C. § 1226, which governs detention "pending a decision on whether the alien is to be removed from the United States". 8 U.S.C. § 1226(a).

judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order[,] [or] (iii) [i]If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." 8 U.S.C. § 1231(a)(1)(B). Once an order of removal against an alien becomes final, the Government is generally required to remove the alien from the United States within 90 days. See 8 U.S.C. § 1231(a)(1)(A).

The removal period shall be extended, however, "beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C).

If the removal period has not been extended, 8 U.S.C. § 1231(a)(6) governs post-removal detentions. Title 8, § 1231(a)(6) provides that "an alien ordered removed who is inadmissible under section 1182 . . ., removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) . . . or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period." 8 U.S.C. § 1231(a)(6). Although Section 1231(a)(6) does not set a limit on the length of detention beyond

the removal period, the Supreme Court has held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute". Zadvydas v. Davis, 533 U.S. at 699.

Under Zadvydas, the first six months of detention following a final removal order are presumptively permissible. 533 U.S. at 701. Once the six-month period has passed, the burden shifts to the alien-petitioner to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Id. Only if the alien makes this showing does the burden shift back to the Government, which "must respond with evidence sufficient to rebut" the alien's showing that there is no significant likelihood that he or she will be deported in the reasonably foreseeable future. Id. ; see also Wang v. Ashcroft, 320 F.3d 130, 146 (2d Cir. 2003) ("Because the Zadvydas Court set forth this 'reasonable foreseeability' test in order to prevent § 241 [i.e, [8 U.S.C. § 1231] from violating the Due Process Clause, we may safely assume that this test articulates the outer bounds of the Government's ability to detain aliens (other than those serving criminal sentences) without jeopardizing their due process rights. Under Zadvydas, then, detention of an alien 'once removal is no longer reasonably foreseeable' not only violates § 241, it also violates the Due Process Clause.") (emphasis supplied).

Khan asserts that his continued detention without a bail hearing violates his substantive due process rights. According to

Khan, his "consulate has not issued travel documents and there is no certainty as to when, if ever, such travel documents will be issued." Petition ("Pet."), ¶20 (Docket No. 1). Khan also asserts that he is not a flight risk.

Respondents argue the Pakistan Consulate's willingness to issue travel documents on two occasions for Khan undermines his allegation that the Consulate "has no intention of issuing a travel document." Pet., ¶¶ 24, 41 (Docket No. 1). As noted above, on June 4, 2010, the Pakistan Consulate provided DHS with a travel document for Khan's removal to Pakistan. See Mitchell Aff., at Exhibit A, pp. 12-14, 18. After this document expired, DHS requested and received permission from the Pakistan Consulate to have the travel document re-issued and extended for three more months.  Although this travel document has expired and another one has not been reissued, the Court finds that in light of DHS' successful dealings with the Pakistan Consulate regarding Khan, there is no reason to doubt that DHS will be able to obtain a renewed travel document in the future. Thus, the Court agrees with Respondents that there are no institutional barriers to removal in this case as there were in Zadvydas, where the countries to which the Government sought to repatriate the petitioners had refused to accept them.

Khan has not demonstrated that there are any impediments that would prevent a new travel document being issued for him upon the Government's re-application to the Pakistan Consulate. Moreover,

the Second Circuit has repeatedly dismissed Khan's previous petitions for review. For instance, in Khan v. Gonzales, No. 07-3821-ag (2d Cir. Mar. 17, 2008), the Second Circuit summarily ordered the petition "DISMISSED because it lack[ed] an arguable basis in law or fact. See 28 U.S.C. 1915(e); Neitzke v. Williams, 490 U.S. 319, 325 (1989).'".

In his second petition for review, Khan asserted that his crimes-of-conviction were not "aggravated felonies" for purposes of being found deportable under the INA. Under P.L. § 220.18(1), "a person is guilty of criminal possession of a controlled substance in the second degree when he or she knowingly and unlawfully possesses: 1. one or more preparations, compounds, mixtures or substances containing a narcotic drug and said preparations, compounds, mixtures or substances are of an aggregate weight of four ounces or more . . . ." N.Y. PENAL LAW § 220.18(1). Under P.L. § 220.43(1), "[a] person is guilty of criminal sale of a controlled substance in the first degree when he knowingly and unlawfully sells: 1. one or more preparations, compounds, mixtures or substances containing a narcotic drug and the preparations, compounds, mixtures or substances are of an aggregate weight of two ounces or more . . . ." N.Y. PENAL LAW § 220.43(1).

The BIA determined that these crimes constituted "aggravated felonies" for purposes of 8 U.S.C. § 1101(a)(43)(B), rendering Khan deportable under 8 U.S.C. § 1227(a)(2)(A)(iii). Section 101 (a)(43)

of the INA, 8 U.S.C. § 1101(a)(43), defines an "aggravated felony" to include "(B) illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)" and "(U) an attempt or conspiracy to commit an offense described in this paragraph." "[A] state offense constitutes a 'felony punishable under the Controlled Substances Act' only if it proscribes conduct punishable as a felony under that federal law." Lopez v. Gonzales, 549 U.S. 47, 127 S. Ct. 625, 633 (2006). "The act of selling is unquestionably 'illicit trafficking' when the item sold is a controlled substance[,]" Gousse v. Ashcroft, 339 F.3d 91, 96 (2d Cir. 2003) (citing 8 U.S.C. § 1101(a)(43)(B) (defining "illicit trafficking in a controlled substance" to include "a drug trafficking crime" as defined in 18 U.S.C. § 924(c)); 18 U.S.C. § 924(c)(2) (defining "drug trafficking crime" to include any felony punishable under the CSA); 21 U.S.C. § 841(a)(1) (proscribing, inter alia, the distribution of a controlled substance)). Heroin is a "controlled substance" for purposes of the CSA. Id. at 739 (citations omitted).

As noted above, Khan was convicted of first degree criminal sale of heroin and second degree criminal possession of heroin. The first degree sale-related conviction clearly constitutes a "drug trafficking" crime under the CSA and thus constituted an

aggravated felony.[5] Khan does not appear to have a colorable argument for challenging the BIA's determination that he is deportable.

Khan's third petition for review also was dismissed. His fourth and final petition for review, which does not appear to raise any new grounds for vacating the removal order, in all likelihood will summarily dismissed as well. See Wang, 320 F.3d at 146 ("Wang asks us to hold that his continued detention without a bail hearing violates his substantive due process rights. But, pursuant to Zadvydas, Wang's due process rights are not jeopardized by his continued detention as long as his removal remains reasonably foreseeable. Because we have declined above to grant Wang's habeas petition based upon his CAT claim, Wang's removal is not merely reasonably foreseeable, it is imminent. Accordingly,

---

[5] With regard to the second degree possession related conviction, "[m]ere possession is not, however, a felony under the federal CSA, see 21 U.S.C. § 844(a), although possessing more than what one person would have for himself will support conviction for the federal felony of possession with intent to distribute, see § 841 (2000 ed. and Supp. III)[.]" Lopez, 549 U.S. at 53 (citing United States v. Kates, 174 F.3d 580, 582 (5th Cir. 1999) (per curiam) ("Intent to distribute may be inferred from the possession of a quantity of drugs too large to be used by the defendant alone"). Conviction under P.L. § 220.18(1) requires possession of four (4) ounces (i.e., 113.398 g) or greater of a narcotic (in Khan's case, heroin). "[A]lthough possession of over 100 grams of cocaine may not be per se inconsistent with personal use, see United States v. Levy, 703 F.2d 791, 793 & n. 7 (4th Cir. 1983), the quantity is so large as to make personal use extraordinarily unlikely." United States v. Porter, No. 99-1235, 205 F.3d 1326 (Table) 2000 WL 241343, at *2 (2d Cir. Feb. 1, 2000) (unpublished opn.) (holding that trial court did not abuse its discretion in determining that the evidence could not permit a rational jury to find Porter guilty of attempted possession but not guilty of attempted possession with intent to distribute where amount of cocaine seized was more than 100 grams). The Court notes that under the federal sentencing guidelines, possession of more than fifty grams of pure heroin calls for the "greatest" severity rating.

Wang's continued detention does not violate his right to due process of law.").

Respondents have credibly asserted that but for Khan's filing numerous petitions for review and concomitant stay requests, he could have been deported to Pakistan some time ago, and the Court has been provided no reason to believe otherwise. See Abimbola v. Ridge, 3:04CV856 (MRK), 2005 WL 588769, at *3 (D. Conn. Mar. 7, 2005) ("Respondents represent, and the Court has no reason to believe otherwise, that but for Mr. Abimbola seeking and/or receiving numerous judicial stays and filing his numerous petitions for reconsideration and appeals, Mr. Abimbola could have been speedily deported to Nigeria some time ago. In light of the fact that Mr. Abimbola's own actions in seeking judicial stays of his removal (and not moving to dissolve them) are the reason for his continued detention and Respondents' failure to remove him sooner . . . ."), aff'd, 181 Fed. Appx. 97 (2d Cir. May 18, 2006) (unpublished opn.).

Under the circumstances presented here, the Court cannot find that Petitioner has met his threshold burden of demonstrating that there is no significant probability that he will be able to be removed in the reasonably foreseeable future. See Zadvydas, 533 U.S. at 701 (alien under final order of removal seeking release must "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future").

Significantly, Khan has offered no evidence to support his contention that he cannot be removed to Pakistan once his review proceedings in the Second Circuit are concluded. Accordingly, Khan's petition is denied. The denial is without prejudice with leave to re-file, if, for instance, Khan's circumstances change such that his removal no longer appears likely to occur in the reasonably foreseeable future.

### III. Conclusion

For the foregoing reasons, the petition for habeas corpus (Docket No. 1) filed by Rashid Nasir Khan is **denied without prejudice**.

**SO ORDERED.**

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

DATED:   October 14, 2011
         Rochester, New York